UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LIFT EQUIPMENT CERTIFICATION CO., INC., <br><br>  Plaintiff <br><br> v. <br><br> LAWRENCE LEASING CORP., <br><br>  Defendant | 2:15-cv-01987-JAD-GWF <br><br> **Order Confirming Arbitration Award** <br><br> [ECF Nos. 2-3, 12] |

Lift Equipment Certification Co. is a heavy-equipment manufacturer that was contracted by Lawrence Leasing Corp., a shipping company, to redesign one of Lawrence's cranes. The deal fell through, and the parties went to arbitration. The arbitrator awarded both parties significant sums, but Lift believes Lawrence got too much and that Lift got too little. It asks that I vacate the arbitrator's award, while Lawrence asks me to confirm it.[1]

My review of arbitration awards is limited. I cannot vacate an award simply because an arbitrator made a mistake about the law or the facts. Instead, Lift faces the heavy burden to prove by clear and convincing evidence that the arbitrator intentionally disregarded obvious legal principles, or that his decision is utterly without support in the record. Lift has proven neither. It has not shown that the arbitrator ignored any governing legal principle (indeed, if anything, the arbitrator appears to have gotten the law right). Nor has it shown that the arbitrator's decision is unsupported by the evidence. I therefore confirm the award in its entirety.

**Background**

**A.    Lawrence contracts with Lift to update and repair Lawrence's shipping crane**.

Lawrence runs a shipping business and uses industrial cranes to move product around its

---

[1] ECF No. 2-3 at 2 (Lift's motion to modify or vacate); 12 (Lawrence's counter motion to confirm).

warehouse. One of these cranes was not working well, so Lawrence contacted Lift, an equipment designer and supplier, to see about getting the crane repaired and upgraded.

Lawrence and Lift eventually signed a contract calling for Lift to fix Lawrence's crane, and in return, Lawrence to pay Lift $1.48 million dollars.[2] A couple of terms in this contract are crucial to this case. First, of that $1.48 million, Lawrence agreed to give Lift a $625,000 deposit before it began its work.[3] This deposit was for Lift's expenses: it could use the money only for parts and labor on Lawrence's crane.[4] Once Lift finished its work, the contract called for Lawrence to pay Lift two remaining payments of $427,500.[5]

The other important provision is the "Default Clause." This clause says that if Lift defaulted and failed to finish the crane, it had to refund Lawrence its $625,000 expense deposit, minus whatever Lift had already spent on new parts.[6] In turn, if Lawrence defaulted on its side of the bargain, it had to pay Lift whatever costs Lift expended on the crane.[7]

**B.    Lift works on the crane for a while, but the parties eventually have a falling out**.

Over the next couple of months, Lift began to redesign and repair the crane. But the project apparently turned out to be costlier than planned, because Lift went through Lawrence's $625,000 expense deposit before the crane was finished. So it went to Lift and asked for another $200,000 to cover additional costs.[8] Lawrence agreed and sent Lift the $200,000, with the understanding that this sum would be subtracted from the balance that Lawrence still owed Lift

---

[2] ECF No. 5-1 at 220.

[3] *Id.* at 224.

[4] *Id.*

[5] *Id.* at 225.

[6] *Id.* at 224. If Lift failed to finish the crane, it was also required to give Lawrence all information related to Lift's redesign of the crane—presumably so Lawrence could have another manufacturer pick up where Lift left off.

[7] *Id.*

[8] *Id.* at 231.

under the contract.[9]

Lift continued working on the crane until it eventually declared it finished. Lift asked Lawrence for the remainder of money it was owed under the contract. But Lawrence refused.[10]

Lawrence believed that Lift had botched the crane.[11] Lawrence's evidence indicates there were sundry problems: the crane had wiring problems, its main hoist overheated, it had the wrong air compressor, the heat and air conditioning did not work, the crane's cab leaked, the crane's cameras were not working, the crane's "brain" was not working properly, Lift did not provide the proper manuals or testing for the crane, and the thing wouldn't even start because of Lift's faulty programming.[12] Lawrence's evidence shows that it spent hundreds of thousands of dollars to undo Lift's mistakes, and it lost hundreds of thousands more in lost profits and lost productivity while the crane was out of commission.[13]

**C.    The parties arbitrate, and the arbitrator awards both parties money**.

Lift wanted the rest of the contract price; Lawrence believed that, if anything, Lift owed it for what Lawrence had spent repairing Lift's work. So the parties went to arbitration. The parties prepared extensive pre-hearing briefing and conducted a five-day arbitration.[14] Lawrence asked for $427,677.30 under the Default Clause (a refund of its deposit minus the money Lift had spent on new parts), plus what it spent finishing the crane, its lost productivity, and its lost profits. Lift asked for the remainder of the contract price (minus some money it admits

---

[9] *Id.*

[10] *Id.* at 16–17.

[11] ECF No. 4-1 at 104.

[12] *Id.*

[13] *Id.* at 106–08. Lift contends that it spent $323,611.84 on repairs, lost $412,118.72 in productivity, and lost $200,000 in new business. *Id*.

[14] *Id.*

3

Lawrence had already paid): $627,429.61.[15]

The arbitrator's decision (and its reasoning) is sparse. It consists of a few brief paragraphs outlining an award for each party.[16] To Lawrence, the arbitrator awarded $427,677.30 "for damages as provided in the Contract," and $280,135.07 for "extra expenses incurred by [Lawrence] to perform corrective work as a result of [Lift's] breach of contract and breach of warranty of workmanlike services."[17] To Lift, the arbitrator awarded $632,429.61 for Lawrence's "breach of the covenant of good faith and fair dealing" and "unjust enrichment."[18]

Lift now asks that I vacate the arbitrator's award, contending that the arbitrator awarded Lawrence too much and Lift too little. Lawrence moves to confirm the award in its entirety.

## Discussion

**A.     Principles governing my review of arbitration awards.**

The law severely limits my review of arbitrations. This is because the value of arbitration is that parties avoid the "higher costs and longer time periods associated with traditional" courts.[19] And obviously, the more scrutiny courts apply to the arbitration process the less arbitration serves these purposes.[20]

To protect arbitration's efficiency, the law places two significant limitations on a party seeking to vacate an award in court. First, an evidentiary one: the challenging party must prove its case not merely by a preponderance of the evidence, but by clear and convincing evidence.[21] Second, the grounds for challenging an award are narrow. Simply pointing out that the arbitrator

---

[15] ECF No. 5-1 at 16–17.

[16] ECF No. 5-1 at 12–13.

[17] *Id.*

[18] *Id.*

[19] *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004).

[20] *Id.*

[21] *Health Plan of Nev. v. Rainbow Med.*, 100 P.3d 172, 176 (Nev. 2004).

made some mistake about the law or facts is generally not enough. Instead, there is only a handful of statutory and common law arguments that a party can raise against an award, and most of them amount to cases where the arbitrator committed outright fraud or corruption.[22]

Lift marshals two of these theories against the arbitrator's award in this case: (1) the arbitrator "manifestly disregarded the law," and (2) the arbitrator's award was "arbitrary and capricious."

**B.     Both of Lift's challenges fail**.

   ***1.     Lift fails to prove that the arbitrator manifestly disregarded the law.***

Lift first argues that the arbitrator "manifestly disregarded the law" because his award is based on a mistake about the legal principles governing the parties' dispute. But as I explain below, Nevada law requires Lift to prove that the arbitrator *intentionally* misapplied a law, not just that he was mistaken—and Lift provides no evidence on this point. This is reason enough to reject its challenge. But even if Lift cleared this hurdle, it has not shown that the arbitrator misapplied the law in the first place.

   *a.     Lift has not shown that the arbitrator intentionally ignored the law.*

"Judicial inquiry under the manifest-disregard-of-the-law standard is extremely limited."[23] A party must do more than show that an arbitrator made a legal mistake, it must show that the arbitrator made that mistake *intentionally*.[24] In other words, the party must prove that the arbitrator "kn[ew] the law and recogniz[ed] that the law required a particular result, [but] simply disregarded" it.[25]

The Nevada Supreme Court has clarified that even proving the arbitrator knew about a

---

[22] *See id.*; *see also* NRS 38.241.

[23] *Clark Cty. Educ. Ass'n v. Clark Cty. Sch. Dist.*, 131 P.3d 5, 9 (Nev. 2006).

[24] *Id.*

[25] *Id.*; *see also Health Plan of Nev., Inc.*, 100 P.3d at 176 ("[E]ven if the arbitrator made an error of fact or misapplied the law on this issue, it would still not amount to a manifest disregard of the law. Manifest disregard of the law goes beyond whether the law was correctly interpreted, it encompasses a conscious disregard of applicable law.").

legal principle and violated it is not enough—a party must still prove that the arbitrator acted intentionally. Two Nevada cases exemplify this principle. In *Manor Health Care Center v. Monsour*, the arbitrator awarded wrongful-death damages although caselaw indicated that these damages were unavailable.[26] The challenging party emphasized that it had told the arbitrator about the correct legal principles, so he must have been aware of them and purposely ignored them.[27] The Nevada Supreme Court disagreed, explaining that whether the arbitrator was told about the law or made a mistake didn't matter.[28] The proper question was whether the arbitrator "intentionally and knowingly" made the mistake. And because there was no proof on this point, the challenge had to be rejected.[29] Similarly, in *Clark County Education Association v. Clark County School District*, a party contended that an arbitrator manifestly disregarded the law by wrongly interpreting a statute—but again failed to provide evidence that the arbitrator did so intentionally. The Nevada Supreme Court held that it simply could not review "the correctness of the arbitrator's interpretation."[30]

    Lift's arguments under this doctrine fail right out of the gate: it has not even tried to prove that the arbitrator *intentionally* ignored any governing legal principle. Lift spends most of its motion explaining why it thinks that the arbitrator got the law wrong. And then it says that because it told the arbitrator about its legal theories, it "believes the Arbitrator had knowledge of these principles, recognized the applicability to the case at hand, and simply refused to apply the law."[31] But this is not enough. The question is whether the arbitrator consciously disregarded the law, and on this point Lift has provided no evidence, much less clear and convincing

---

[26] *Manor Health Care Ctr., Inc. v. Monsour*, 367 P.3d 796, 797 (Nev. 2010).

[27] *Id.*

[28] *Id.*

[29] *Clark Cty. Educ. Ass'n.*, 131 P.3d at 9.

[30] *Id.* Courts have also required that an arbitrator ignored law that was well-defined and "clearly applicable." *Graber v. Comstock Bank*, 905 P.2d 1112, 1116 (Nev. 1995).

[31] ECF No. 15 at 13–14.

1  evidence. Lift's failure to show that the arbitrator consciously disregarded the law is reason
2  enough to reject its challenge. Neither argument has merit.

        b.      *Even if Lift had shown that the arbitrator intentionally ignored Lift's legal arguments, it has not proven that the arbitrator was wrong.*

Assuming that the arbitrator purposely disregarded Lift's legal arguments, he would have been right to do so. Lift argues that the arbitrator disregarded the law in two ways: (1) by refusing to strike down the Default Clause, and (2) by awarding Lawrence a double recovery.

Lift first argues that the arbitrator was wrong to award Lawrence damages under the Default Clause because this clause is an unenforceable liquidated-damages provision. Lift waived this argument by failing to properly raise it with the arbitrator.[32] But, in any event, this clause appears valid.

Liquidated-damages clauses allow contracting parties to settle on a fixed sum that a party will pay if it breaches.[33] The liquidated-damages sum must be the result of "a good faith effort to estimate the actual damages that will probably ensue from a breach."[34] If so, the law presumes these clauses are valid "unless the challenging party proves its application amounts to an unenforceable penalty."[35] "To prove a liquidated damage clause constitutes a penalty, the challenging party must persuade the court that the liquidated damages are disproportionate to the actual damages sustained by the injured party."[36] Courts rarely strike down liquidated-damages

---

[32] Even though Lawrence sought damages under the default clause in its pre-hearing brief, Lift did not meaningfully raise the liquidated-damages arguments in its pre-hearing brief or during the five-day arbitration hearing itself. So I need not even consider this argument. *See Stotter Div. of Graduate Plastics Co. v. Dist. 65, United Auto Workers, AFL-CIO*, 991 F.2d 997, 1003 (2d Cir. 1993) ("The district court declined to decide this issue because it was raised for the first time in. . . . [the] post-hearing arbitration brief. The court was certainly justified in so ruling.").

[33] *Joseph F. Sanson Inv. Co. v. 268 Ltd.*, 795 P.2d 493, 496 (Nev. 1990).

[34] *Mason v. Fakhimi*, 865 P.2d 333, 335 (Nev. 1993).

[35] *Id.*

[36] *Haromy v. Sawyer*, 654 P.2d 1022, 1023 (Nev. 1982).

7

clauses unless a party clearly intended to extract more money than it needed to pay for the harm it suffered.[37]

Lift contends that the Default Clause—which it drafted—is unenforceable both because it was not a good-faith estimate of Lawrence's likely damages and because it is disproportionate to Lawrence's actual damages. The first problem with this contention is that the Default Clause does not even appear to be a damages clause, much less any sort of penalty. The clause simply required Lift to return any unused portion of Lawrence's deposit if Lift was not able to finish the crane. Liquidated damages *replace* a party's damages for a breach, but nothing in the Default Clause limited the parties from suing for damages after Lawrence's deposit was returned. Indeed, the clause does not even refer to damages. Lift provides no authority or analysis to suggest that either it or Lawrence was barred from otherwise suing for their damages caused by a breach. And if the parties could both sue for their damages, Lift could not possibly have been harmed by this clause.

But even if I treat the Default Clause as a liquidated-damages clause, Lift has failed to show either that it was not a good-faith estimate of Lawrence's likely damages or that it is disproportionate to Lawrence's actual damages in this case.[38] This clause is a perfectly sensible estimate of Lawrence's likely damages. If Lift defaulted and failed to finish the crane, Lawrence's damages would presumably be: (1) its out-of-pocket deposit to Lift and (2) whatever it spent to fix Lift's mistakes and finish the crane. On the other hand, Lawrence's damages would be offset by whatever progress Lift had made with the crane at the time it defaulted. The Default Clause balances these damages and offsets: Lawrence is compensated for its out-of-pocket damages (its deposit) but gets only a portion of the money Lift had spent on the crane up to that point. The amount of money Lawrence received would depend on how far Lift was into

---

[37] For example, the Nevada Supreme Court held that liquidated damages amounting to more than three times actual damages was not unenforceable. *Mason*, 865 P.2d at 335.

[38] Lift also suggests that the Default Clause is unenforceable because Lawrence's damages were easy to calculate at the time the contract was signed. But Lift provides no authority or analysis to support this argument. *See* ECF No. 2-3 at 18–19.

the process: the farther along, the more it would have spent on new parts, and the less Lawrence would receive of its deposit. Lift had the burden to prove its own clause was not a good-faith estimate of Lawrence's damages, and it has not done so here.[39]

Nor has Lift proven that the Default Clause's refund of Lawrence's entire deposit is disproportionate to Lawrence's actual damages. Lift argues that Lawrence's actual damages were $280,135.07 and that the arbitrator's refund of $427,677.30 under the Default Clause is thus obviously disproportionate. But the Nevada Supreme Court has upheld liquidated damages clauses that resulted in awards *three times larger than a party's actual damages*.[40] And, in any event, Lift has not met its burden to prove that Lawrence's damages were only $280,135.07. There is evidence in the record suggesting that Lawrence's damages were much higher—evidence Lift ignores.[41]

Lift finally argues that the arbitrator disregarded the law by awarding Lawrence twice for the same injury: once by awarding a refund under the Default Clause, and again by awarding damages for Lawrence's repair costs. "[U]nder the double recovery doctrine, a plaintiff can recover only once for a single injury even if [the] plaintiff asserts multiple legal theories," and "satisfaction of the plaintiff's damages for an injury bars further recovery for that injury."[42]

---

[39] Lift suggests that the Default Clause is a penalty because it was also required to provide Lawrence with its intellectual property, but it provides no authority or analysis to support this argument. Lift was only required to provide intellectual property related to Lift's work on Lawrence's crane (presumably so Lawrence could finish Lift's work if it defaulted). Lift has not even explained why Lawrence would not own the intellectual property that it paid Lift to create, much less explained why providing Lawrence with this information would constitute an unenforceable penalty.

[40] *See, e.g., Mason*, 865 P.2d at 335.

[41] The arbitrator did not explicitly find that Lawrence's damages were only $280,135.07. The arbitrator awarded this amount for "damages for extra expenses incurred by [Lawrence] to perform corrective work." ECF No. 5-1 at 13. But Lawrence provided extensive evidence of other damages caused by Lift's breach, including lost profits and productivity. *See* ECF Nos. 2-3, 3-1 and 4-1.

[42] *Elyousef v. O'Reilly & Ferrario, LLC,* 443, 245 P.3d 547, 548–49 (Nev. 2010).

The arbitrator awarded Lawrence $427,677.30 for "damages as provided in the Contract" (presumably under the Default Clause),[43] and $280,135.07 for "extra expenses incurred . . . to perform corrective work" on the crane. Lift argues that the Default Clause already compensated Lawrence for the "extra expenses" to fix the crane, so it has been paid twice for the same injury. But Lawrence ignores two crucial facts. First, the Default Clause compensated Lawrence for its out-of-pocket *deposit*, not extra expenses to fix the crane. And Lift has not explained how being compensated for a lost deposit on one hand, and extra expenses caused by Lift's breach on the other, results in a double recovery. Second, the arbitrator offset Lawrence's award by $632,429.61 for unjust enrichment—and Lift has not shown that this figure would not account for any possible double-recovery.[44]

At bottom, Lift has fallen short of meeting its burden to prove that the arbitrator was mistaken about any of these legal principles, much less consciously disregarded them.

### 2. *Lift fails to prove that the award is arbitrary and capricious.*

Lift next argues that the arbitrator's award should be vacated because it rests on arbitrary and capricious factual findings. Like the "manifest disregard of the law" standard, arbitrary and capricious review does not permit me to vacate the arbitrator's award merely because he made a mistake.[45] My "review is limited to whether the arbitrator's findings are supported by substantial evidence in the record."[46] If evidence supports the arbitrator's findings, my job ends.

Lift identifies two of the arbitrator's findings that it believes are arbitrary and capricious:

---

[43] This is the precise dollar amount that Lawrence requested under the Default Clause during the arbitration.

[44] ECF No. 5-1 at 13. Lift suggests that the arbitrator awarded it this money as expectation damages for what Lift was owed under the parties' contract. But the arbitrator specifically stated that this award was, in part, an offset for Lawrence's "unjust enrichment"—not Lift's expectation damages.

[45] *Clark Cty. Educ. Ass'n.*, 131 P.3d at 9–10.

[46] *Id.* (holding that, because "the arbitrator's seventeen-page opinion and award specifically recount[ed] the factual underpinning of the award," "the arbitrator's decision [wa]s supported by substantial evidence and therefore [] not arbitrary and capricious").

(1) the arbitrator's finding that Lawrence's second payment for $200,000 fell under the Default Clause,[47] and (2) the arbitrator's decision to reduce Lift's award by $40,000.

The arbitrator awarded Lawrence the full $427,677.30 that it asked for in its briefing. When Lawrence calculated this number by taking the refund of Lawrence's original deposit of $625,000 for costs, plus the additional $200,000 Lift requested for costs to finish the crane, and subtracting the money that Lift spent on new parts. I assume that the arbitrator accepted Lawrence's calculations, including that its $200,000 payment should be treated as a deposit under the Default Clause (and thus that this money should be returned as a refund along with Lawrence's initial deposit).

Whether the parties intended the $200,000 payment to fall under the Deposit Clause was a factual question: did the parties intend to modify the contract so that Lawrence's second payment was treated like its initial deposit?[48] Evidence indicates they did. The Default Clause states that Lift could only use Lawrence's initial deposit for parts and other repair costs. Thus, the parties appear to have intended that the Default Clause would govern the money Lawrence paid Lift to use for costs related to the crane. And Lift asked Lawrence for the second $200,000 payment for *precisely the same reason*: to pay costs related to the crane. Moreover, when Lift asked for this payment, its justification was that the original deposit fell short—further indicating that Lift was in effect asking to increase the amount the parties had allocated in the contract for the crane's costs. Whether or not Lift or I agree with the arbitrator, I cannot say his decision to include the $200,000 under the Default Clause is not supported by evidence.

Nor can I say that the arbitrator's reduction of its award to Lift is unsupported by the evidence. Lift asked the arbitrator for $672,429.61, which represented the remainder of Lawrence's payments due under the contract (minus what Lawrence already paid it). In other words, Lift asked for its expectation damages. The arbitrator awarded Lift only $632,429.61,

---

[47] The arbitrator's award under the Default Clause appears to include the additional $200,000 that Lawrence paid Lift after its initial deposit.

[48] *Casino Operations, Inc. v. Graham,* 476 P.2d 953, 956 (Nev. 1970).

and Lift argues that the arbitrator had no basis to subtract $40,000.

The first problem is that Lift's argument hinges on the proposition that the arbitrator awarded Lift expectation damages for what it was owed under the purchase price of the contract—and that the arbitrator had no basis for reducing those expectation damages. But that isn't what the arbitrator did. The arbitrator awarded Lift money for a breach of the "covenant of good faith" and for "unjust enrichment." Lift has not even tried to explain how an award for $632,429.61 in unjust enrichment and damages from a breach of the covenant of good faith were not supported by the record.

Further, Lift fails to address the other evidence in the record that supports the arbitrator's reduction. Lawrence's detailed records show the various ways in which Lift failed to properly fix the crane, Lawrence's lost profits, and Lawrence's other damages.[49] And Lift points to no evidence indicating that the arbitrator's reduction was arbitrary. It was Lift's burden to prove that the evidence in the record did not support a reduction; it's not Lawrence's burden (or mine) to comb the record for possible evidence that supports Lift's position.

**C.    I decline to award Lawrence attorney's fees and costs.**

Lawrence also requests attorney's fees and costs under NRS 38.243. Under this statute, I have discretion to award reasonable attorney's fees and costs to a prevailing party after confirming an arbitration award.[50]

I decline to use my discretion to award Lawrence anything else. Lawrence provides no

---

[49] Lift also argues that the arbitrator "exceeded his powers" under NRS § 38.241 because he "unilaterally modified the contract" by reducing Lift's award by $40,000. Lift's theory is that the arbitrator rewrote the contract price so that Lift only received part of what Lawrence owed it. But as explained above, the arbitrator awarded Lift for breach of the covenant of good faith and Lawrence's unjust enrichment, not for the contract price. Thus, there is no basis for Lift's argument that the arbitrator "rewrote" the parties' contract. Lift's legal theory would fail anyway. To prove that an arbitrator acted outside his authority, Lift must show that the parties' contract did not provide the arbitrator with power to make the decision he did. *Richardson v. Harris*, 818 P.2d 1209, 1211 (Nev. 1991). And the parties' contract authorized the arbitrator to settle "all disputes" arising under it—including disputes about how much of the contract price Lift was entitled to.

[50] NRS 38.243.

meaningful reason why it should be awarded fees and costs, other than the fact that Lift faced a "very high burden" and should not have disagreed with the arbitrator's decision. Although Lift faced a heavy burden, its arguments were far from frivolous—particularly given the arbitration award's vagueness.

## Conclusion

Accordingly, with good cause appearing and no reason to delay, IT THEREFORE IS ORDERED, ADJUDGED AND DECREED that the arbitrator's award is confirmed in its entirety. Lift's Motion to Modify or Partially Vacate the Award **[ECF No. 2-3] is DENIED**, and Lawrence's Counter Motion to Confirm **[ECF No. 12] is GRANTED IN PART AND DENIED IN PART: I confirm the arbitrator's award, but I deny Lawrence's request for attorney's fees.**

IT FURTHER IS ORDERED that the Clerk of Court is directed to CLOSE THIS CASE.

DATED: September 23, 2016

_____
Jennifer A. Dorsey
United States District Judge